IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIANNA MOSSBROOKS<br>2255 Par Lane, Apt. #1018<br>Willoughby Hills, OH 44094<br><br>          Plaintiff<br><br>vs.<br><br>PEDRA PROPERTIES, LLC<br>3210 Warrensville Center Road<br>Shaker Heights, OH 44122<br><br>and<br><br>ALAN GORDON PEARLMAN<br>32575 Trailwood Court<br>Solon, OH 44139-1370<br><br>          Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.<br><br>JUDGE<br><br><br><br>**COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

Now comes Plaintiff, Brianna Mossbrooks ("Plaintiff"), by and through counsel, and for her Complaint against Defendants, Pedra Properties, LLC ("Pedra") and Alan Gordon Pearlman ("Pearlman") (collectively, "Defendants"), states as follows:

1. Plaintiff is an individual residing in Lake County, Ohio.

2. Pedra is an entity owned and/or controlled by Pearlman, either or both of which own residential rental property located at 3208 Warrensville Center Road, Shaker Heights, Ohio 44122.

3. The events giving rise to this matter relate to the leasing of Suite 109 located at the above-referenced property from Defendants to Plaintiff.

4. This Court has original jurisdiction over the claims in this Complaint pursuant to the Fair Housing Act, 42 U.S.C. § 3601-3619.

5. The Fair Housing Act prohibits disability discrimination in the housing market by failure or refusing to provide reasonable accommodations which are necessary to afford a person with a disability the equal opportunity to use and enjoy a dwelling, under 42 U.S.C. § 3604(f)(3)(B).

6. Plaintiff is handicapped within the definition of the Fair Housing Act.

7. This Court has personal jurisdiction over Defendants because they are residents of this judicial district.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTS

9. Plaintiff is a former tenant of property owned, managed and/or controlled by Defendants located at 3208 Warrensville Center Road, #109, Shaker Heights, Ohio 44122.

10. Plaintiff toured the rental unit on May 17, 2021 with Pearlman and it was made clear to Pearlman at that time that Plaintiff was a person with a disability and that she frequently uses a wheelchair and/or walker.  Plaintiff also advised Defendants that she had a permanent disability parking placard for her car.

11. Pearlman repeatedly assured Plaintiff that she would be given reasonable access and accommodation in connection with renting the apartment and that her caregivers would be given access to the property to assist Plaintiff in the management of her disability.

12. On June 9, 2021, Plaintiff emailed Defendants regarding the accommodations she would need including the permission for a live-in caregiver and an extra parking space for her caregiver following an upcoming surgery.

13. On June 23, 2021, Plaintiff contacted Defendants and again asked for these accommodations in light of her surgeries and continued disability.

14. Defendants denied Plaintiff's request for accommodation in this regard and refused to provide an extra key or provide access to the building for Plaintiff's caregivers.

15. Instead, Defendants stated that Plaintiff should give the caregiver her key and just never leave the property.

16. Defendants further refused to provide access or accommodation for the removal of trash and refuse from her apartment as she was unable to lift the lid of the exterior dumpster because of her physical limitations. Defendants were aware of this and provided no accommodation for the disposal of refuse.

17. Plaintiff expressly advised Defendants that she needed a reasonable accommodation based on her disability which substantially limited one or more of her major life activities and she specifically requested:

   (1) Unrestricted access by a caregiver,
   (2) An additional set of keys for the caregiver,
   (3) An additional parking space (which Plaintiff was willing to pay for) for the caregiver, and
   (4) She offered to provide medical documentation confirming the existence of her disability.

Defendants never responded to this request.

18. On the day Plaintiff moved into the apartment, the back entrance of the building was blocked by a car. The front entrance of the building is less than 10 feet from the apartment door whereas the back door is over 150 feet away. Plaintiff asked for accommodation that she be

allowed to use the front entrance closest to the apartment for move-in purposes and Defendants refused sending an email which stated:

> For some reason you feel that you can disregard the property rules and regulations. Regardless of your reason, that is not acceptable. The rules and regulations are in place for everyone. They are fair and equitable.

Thus, Defendants expressly acknowledge being advised of the request for disability accommodations and refused same.

19. Later that year, Plaintiff advised Defendants that she needed a caregiver to stay with her after an upcoming surgery from August through December 2021.

20. On June 30, 2021, Defendants demanded to know what the exact schedule was to be for the caregiver, how long she would need an extra key and fob, and the time-frame Plaintiff would be confined to a wheelchair.

21. Plaintiff expressly advised Defendants that her disability is permanent and that the request is indefinite. Pearlman responded that he would need to review proper documentation of this disability which was never mentioned during the leasing process and, in fact, contrary to Defendants' assurances and asked if she was claiming a "pre-existing condition."

22. Plaintiff expressly provided the Defendants with the rules and regulations of the Housing Urban Development ("HUD") regarding the federal rules providing reasonable access to housing as part of disabled persons.

23. Defendants continued to refuse to provide indefinite access to Plaintiff's caregiver, demanding that the caregiver is limited to staying with her no more than five consecutive days, 10 days within a single month.

24. Defendants then threatened Plaintiff with eviction if her caregiver stayed beyond the time Defendants specified.

25. On July 22, 2021, a representative from the Shaker Heights Fair Housing Center contacted Defendants and specified the reasonable accommodations sought by Plaintiff and the necessity that Defendants comply with same. Multiple letters from Plaintiff's treating medical providers, including a request for accommodation, were provided to Defendants.

26. Despite being provided written documentation from multiple healthcare providers that Plaintiff was in need of various accommodations in the housing, Defendants rejected this request and specifically rejected Plaintiff's request for a caregiver to stay on an indefinite period of time. Instead, Defendants only agreed to provide an extra garage opener on the condition that it be returned in one week.

27. On numerous occasions, Pearlman has asked inappropriate questions of Plaintiff, made discriminatory statements relating to Plaintiff's disability, and engaged in this behavior even after receiving multiple letters from medical providers and doctors substantiating the need for accommodations.

28. This discriminatory behavior continued throughout 2021 up through and including the termination of the lease on June 30, 2022.

29. Plaintiff complained regarding Defendants' discriminatory behavior to the Department of Law Housing Administration of the City of Shaker Heights.

30. William M. Ondrey Gruber, the Director of Law/Fair Housing Administration, responded to Plaintiff's complaint by conducting an investigation. On January 14, 2022, Mr. Ondrey Gruber's department issued a finding of fact in Plaintiff's favor as follows:

> This is to inform you that the investigation of the fair housing complaint you filed against Pedra Properties, LLC and Alan Pearlman (collectively referred to as "Respondents") has been completed. After a thorough investigation, it is our conclusion that there are reasonable grounds to believe that violations of both the

> city's fair housing ordinances and Title VIII of the Civil Rights Act of 1968 occurred as alleged in your complaint.
>
> …
>
> The complaint filed against Respondents alleged discrimination in housing based on disability, through a refusal by Respondents to grant you reasonable accommodation, in relation to the subject property 3208 Warrensville Center Road, Apt. 109, Shaker Heights, Ohio 44122. Specifically, you allege that you requested – multiple times, permission for a live-in caregiver, and that you receive an extra set of keys and fob and garage door opener for your caregiver. Respondents denied these requests even after being provided documentation regarding your disability. Secondly, Respondents were alleged to have made discriminatory statements – both verbal and written – based on disability.
>
> …
>
> Based on a review of the documents and interviews of the parties and witnesses, it has been determined that the weight of the evidence supports a finding of reasonable grounds to believe that discrimination based on disability – through failure to make reasonable accommodation and the making of discriminatory statements – did occur.

See Findings of Reasonable Grounds, attached in **Exhibit A**.

## COUNT I
### Direct Violation of Fair Housing Act

31. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 30 as if fully rewritten herein.

32. The conduct of Defendants and the treatment of Plaintiff is in violation of the Federal Fair Housing Act, 42 U.S.C. § 3601-3619 insofar as Defendants refused to recognize Plaintiff's "handicap" or disability and failed to make reasonable accommodations in rules, policies, practices or services when such accommodations were requested and were proven to be necessary.

33. Defendant further violated the Act by failing or refusing to afford Plaintiff, a person with a disability, the equal opportunity to use and enjoy the premises in violation of 42 U.S.C. § 3604(f)(3)(B). The Act further prohibits housing providers – like Defendants herein – from

refusing residency to persons with disability or placing conditions on their residency, because those persons may require reasonable accommodations.

34. In addition, the Act requires that housing providers allow residents to make reasonable structural modifications to units and public/common areas in a dwelling when those modifications may be necessary for persons with a disability to have full enjoyment of the dwelling.

35. Defendants willfully and intentionally violated these provisions, causing physical and emotional distress to Plaintiff, requiring medical care and treatment and mental health treatment.

36. Defendants' behavior in this regard was extreme and outrageous going beyond the bounds of decency to cause reasonable persons to view Defendants' conduct as extreme and outrageous, warranting the award of both compensatory and punitive damages.

37. As a result of Defendants' discriminatory practices, Plaintiff was forced to vacate the property upon the termination of the lease and find a new place to live.

38. As a result of Defendants' discriminatory practices, Plaintiff has suffered physical distress and emotional distress including humiliation, embarrassment, disappointment and frustration for which she has sought treatment.

## COUNT II
### Negligent and Intentional Infliction of Physical and Emotional Distress

39. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 38 as if fully rewritten herein.

40. As a direct and proximate result of Defendants' extreme and outrageous behavior, and discriminatory practices, Plaintiff suffered physical injuries attempting to negotiate the non-compliant conditions of the property to accommodate disability and extreme emotional distress.

41. Plaintiff has suffered from a disability for many years and Defendants' conduct has exacerbated the physical conditions of her disability and causing her to seek medical treatment.

42. Defendants had a duty to accommodate Plaintiff in a reasonable manner as a disabled person and to comply with Plaintiff's reasonable requests for accommodations which were demonstrated to be valid and necessary.

43. Defendants breached that duty by failing or refusing to appropriately respond to the request for physical accommodations and otherwise acted negligently causing physical and emotional injuries.

44. As a direct and proximate result of Defendants' negligently breaching their duty to Plaintiff, Plaintiff was caused to suffer physical and emotional injuries for which she sought medical treatment.

WHEREFORE, based on the foregoing, Plaintiff demands judgment against Defendants in the amount of $500,000.00 in compensatory damages for mental and emotional distress, as well $1,000,000.00 in punitive damages.

## JURY DEMAND

Pursuant to the Ohio Rules of Civil Procedure, Plaintiff demands a trial by jury on any and all issues set forth in this Complaint to the maximum number of jurors permitted by law.

Respectfully submitted,

/s/ Dennis R. Fogarty
DENNIS R. FOGARTY (0055563)
**DAVIS & YOUNG**
35000 Chardon Road, Suite 100
Willoughby Hills, OH 44094
T: (216) 348-1700
F: (216) 621-0602
Email: dfogarty@davisyoung.com
***Attorney for Plaintiff***